OPINION
{¶ 1} This matter came before the court on August 23, 2002, on an appeal from an order of the Juvenile Court that denied a minor female's petition seeking an order authorizing her to consent to an abortion without notification of her parents, guardian, or custodian. On that same date, we reversed the trial court's order and entered judgment granting the relief requested in the petition. The following opinion states our reasons for so doing.
 {¶ 2} As a preliminary matter, we note that the form of petition that was filed, which was apparently furnished to the petitioner for that purpose by the Juvenile Court, fails to conform to the requirements of R.C. 2151.85. That section expressly requires the petition to contain either or both of the averments specified by paragraphs (A)(4)(a) and (b) therein, which involve the petitioner's ability to make the decision to have an abortion, any potential of abuse, or her best interest. The form used by the court contains neither averment, though it does appear to comply with the parallel provisions of R.C. 2919.121, to which the form makes reference. That section prohibits unlawful abortions but preserves the minor's right to file the petition contemplated by R.C. 2151.85. It also states, at paragraph (C)(1): "The juvenile court shall assist the minor or next friend in preparing the petition and notices required by this section." Unfortunately, the section fails to refer to the alternative grounds mandated by R.C. 2151.85(A)(4)(a) and (b). In view of the express requirements of that section, and the specific findings that R.C. 2151.85(C) requires the Juvenile Court to make concerning those grounds, the court should revise its form of petition to include them.
 {¶ 3} The Juvenile Court was, nevertheless, guided by R.C.2151.85(C)(1) and found that the minor was not sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents. The court denied the relief the petitioner requested. On appeal, she presents two assignments of error. First, she argues that the Juvenile Court abused its discretion in so finding. Second, she argues that her trial counsel was ineffective in presenting her case.
 {¶ 4} The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. When reviewing an abuse of discretion claim, an appellate court should be guided by the presumption that the trial court was correct in weighing the credibility of the proffered testimony. In reJane Doe I (1990), 57 Ohio St.3d 135. However, when it finds that the trial court acted unreasonably or arbitrarily in exercising the discretion conferred on it by R.C. 2151.85, the appellate court must reverse and grant the petition.
 {¶ 5} The Juvenile Court is required by R.C. 2151.85(C)(1) to make the findings contemplated by R.C. 2151.85(A)(4)(a) and (b) by clear and convincing evidence; "Clear and convincing evidence" is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cleveland Bar Assn. v. Cleary, 93 Ohio St.3d 191,2001-Ohio-1326.
 {¶ 6} The evidence shows that the petitioner is sixteen years of age and will be seventeen within a few months. She lives with her parents. She is a high school student who enjoys a high grade point average. She and her boyfriend practiced birth control, using condoms, but the system failed and she became pregnant.
 {¶ 7} The evidence further shows that the petitioner learned she was pregnant through a home pregnancy test. She submitted to a more conclusive test at a social services agency, which confirmed that she was pregnant. The agency provided her a pamphlet concerning abortion and the address of a clinic in Dayton that would perform the procedure. The petitioner made further efforts to acquaint herself about abortion and its consequences by searching the Internet. She testified that she did so in May and June, spending a total of about three hours.
 {¶ 8} Petitioner testified that she was aware that the possible risks of abortion included excess bleeding after. She further testified that she consulted anti-abortion sources of information, presumably also from the Internet, and concluded that no connection exists between abortion and the risk of breast cancer. She also concluded that an abortion, properly performed and absent complications, presents a low or no risk of being unable to conceive again.
 {¶ 9} Petitioner testified that she considered adoption as an alternative to abortion, but rejected that because of her parents' views. She testified that they were adamantly opposed to her dating her boyfriend, who is of a different race, and that should she give birth to a bi-racial child "[t]hey would be furious at me." (T. 14).
 {¶ 10} Petitioner testified that she would pay for the abortion out of money she had earned. She had the support of her boyfriend, who accompanied her to court. She conceded that she had consulted with no other sources, including any medical providers or counselors, about abortion. However, she was aware of the way in which the procedure might be performed in her case. She testified that she was then three months pregnant.
 {¶ 11} The Juvenile Court found that the petitioner failed to demonstrate the level of maturity that R.C. 2151.85(A)(4)(a) contemplates, which is that she "is sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents . . ." The trial court based its finding on the fact that the petitioner had not spoken with a person who has had an abortion, or with any medical provider, or with the clinic that would perform the procedure. The court concluded that she was therefore "manifestly immature and uninformed" about a procedure that has life-changing consequences because she lacked sufficient information about abortion as well as its consequences and alternatives.
 {¶ 12} The court did not state what more, specifically, the petitioner should do or what more she must know to demonstrate the maturity required, or that she process information about abortion that R.C. 2151.85(A)(4)(a) contemplates. She was aware of the nature of the procedure and what it involves. She researched and weighed its risks to her health. She considered and rejected adoption. She consulted with a social services agency and performed her own independent inquiries. Those inquiries were conducted via the Internet. To some, that may seem to be an insufficient source. However, it can't be denied that many people, including those older and more experienced than this petitioner, put great reliance on what is published there.
 {¶ 13} The fact that petitioner didn't consult with a physician or a clinic where the abortion would be performed is not convincing. The potential civil liability and criminal penalties attached to providing medical care to a minor absent a parent's consent, and an abortion in particular, are sufficient to dissuade those sources from meeting with a minor to even discuss abortion. It is unreasonable to find that she is not well enough informed about abortion or not sufficiently mature to decide because she did not do these things. Further, being a teenager who lives in a small, close-knit community, it is unreasonable to expect her to seek out another person who has had an abortion to discuss the experience.
 {¶ 14} What amount of knowledge or level of maturity is sufficient for an intelligent decision to have an abortion is not specified by R.C.2151.85(A)(4)(a). It merely demands that the minor have "enough" of each. If the fact of minority is held to prevent a finding that the required level of maturity exists, then the statute would be pointless. Of course, maturity is generally viewed to increase with age, so persons in the lower age ranges might be more apt to lack maturity. Neither does the statute identify what amount of information about abortion is necessary to make an intelligent decision. Misinformation or denial of a material fact generally associated with abortion weighs against the finding required. However, a demonstrated appreciation of the abortion procedure and of its consequences, to the extent that they can reasonably be foreseen, is generally sufficient. The statute makes no mention of abortion alternatives.
 {¶ 15} We find that the petitioner's knowledge about abortion and its risks, the procedures involved, her consideration of its alternatives, coupled with the level of personal responsibility for herself that her testimony demonstrates, is clear and convincing evidence of the maturity and intelligence that R.C. 2151.85(A)(4)(a) requires. The trial court was therefore mandated by R.C. 2151.95(C)(1) to grant the relief she asked. The court abused its discretion when it failed to do so.
 {¶ 16} Petitioner's first assignment of error is sustained. Because that renders her second assignment of error, which argues ineffective assistance of counsel, moot, we decline to decide it. App.R. 12(A)(2).
WOLFF, P.J., BROGAN, J. AND GRADY, J., concur.
 NOTICE
IF APPELLANT BELIEVES THAT THIS OPINION MAY DISCLOSE HER IDENTITY, APPELLANT HAS A RIGHT TO APPEAR AND ARGUE AT A HEARING BEFORE THIS COURT. APPELLANT MAY PERFECT THIS RIGHT TO A HEARING BY FILING A MOTION FOR A HEARING WITHIN FOURTEEN DAYS OF THE DATE OF THIS OPINION.
THE CLERK IS INSTRUCTED THAT THIS OPINION IS NOT TO BE MADE AVAILABLE FOR RELEASE UNTIL: (1) TWENTY-ONE DAYS HAVE PASSED SINCE THE DATE OF THE OPINION AND APPELLANT HAS NOT FILED A MOTION, OR (2) IF APPELLANT HAS FILED A MOTION, AFTER THIS COURT HAS RULED ON THE MOTION.